The **CITIZENS & SOUTHERN NATIONAL BANK, as Administrator and John L. Burge, as Executor, Estate of Chester A. Burge, Deceased, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 31121.**

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1971.

J. René Hawkins, Benjamin M. Garland, T. Reese Watkins, Wilbur D. Owens, Jr., Macon, Ga., for plaintiffs-appellants; Bloch, Hall, Hawkins & Owens, Harris, Russell & Watkins, Macon, Ga., of counsel.

Wm. Schloth, U. S. Atty., D. L. Rampey, Jr., Atty., Macon, Ga., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Michael L. Paup, Elmer J. Kelsey, Virginia M. Hopkinson, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GEWIN, GOLDBERG, and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

In this tax dispute we have been summoned to interpret the estate tax marital deduction. While simple in concept, that provision has become more complex with each encrusting precedent. The taxpayers herein seek further complication of that encrustation, requesting this Court to incorporate into the marital de-

duction provisions the law guiding quilled conveyances of medieval times. However, tax provisions generally are not native to the niceties of conveyancing of yore. Preferring that a taxing statute be given a contemporary construction, we refuse to harken back to terms and terminologies whose origins are far removed from the modern phenomenon of estate taxation.

Chester A. Burge, a resident of the State of Florida, died on October 7, 1963, survived by his widow, Mrs. Anna Dickie Oleson Burge, and by an only child, John L. Burge, whose mother was the decedent's first wife. At the time of his death, the decedent owned property in both Florida and Georgia. His last will and testament was duly admitted to probate in Palm Beach County, Florida, and John L. Burge qualified as executor of the decedent's Florida estate. The widow, however, decided to take against the will and formally elected a statutory dower interest in the decedent's Florida estate, which entitled her to one-third of the realty and personalty of the decedent.

The decedent's will had been executed prior to his marriage to Mrs. Anna Burge and contained no provision in contemplation of that union. Therefore, under Georgia law, the decedent's marriage effectuated a revocation of his will,[1] and upon the decedent's death title to his Georgia property, which consisted solely of realty, vested immediately in John L. Burge, subject only to the widow's right to take a child's share in the Georgia estate or have dower assigned therein.[2] Under Georgia law, the widow's dower interest was a one-third life estate in all of the decedent's Georgia property,[3] but a child's share, in the case of Mrs. Anna Burge, was an undivided one-half interest in all of the decedent's Georgia realty.[4]

Without formally electing either a child's share or a dower interest in the Georgia property, the widow, some five months after the decedent's death and subsequent to her election to take a dower interest in the Florida estate, entered into an agreement with her stepson in which she relinquished all of her right, title, interest, claim, or demand in the entire estate of her husband in exchange for $40,000. In due course plaintiff Citizens & Southern National Bank, as administrator of the Georgia estate, and plaintiff John L. Burge, as executor of the Florida estate, filed a federal estate tax return in which they claimed a marital deduction in excess of $82,000 against a gross estate of approximately $400,000. The Commissioner of Internal Revenue reduced the marital deduction to $40,000, which is the amount received by the widow from her stepson in exchange for all of her rights and interests in the entire estate. This disallowance of the claimed marital deduction was accompanied by an assessment of additional tax, which was paid by the estate. The plaintiffs then filed a claim for refund, which was disallowed, and thereafter timely instituted an action in federal district court to recover the allegedly erroneous tax assessment.

The Internal Revenue Code of 1954 provides that, for purposes of the federal estate tax, a marital deduction from the gross taxable estate of a decedent is allowed in "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * *" 26 U.S.C.A. § 2056(a). The taxpayers herein assert that this section authorizes the claimed marital deduction in excess of $82,000.

---

1. Ga.Code Ann. § 113-408 provides:
   "In all cases, the marriage of the testator, total divorce or the birth of a child to him, subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will."

2. *See* Heard v. Kenney, 146 Ga. 719, 92 S.E. 211 (1917).

3. The right of dower was abolished in Georgia in 1969. *See* Ga.Code Ann. Title 31.

4. *See* Ga.Code Ann. § 113-903.

Essentially, plaintiffs contend, and the government denies, that Mrs. Burge made a valid, informal election to take a child's share in the Georgia estate, and thereafter became vested with an undivided one-half interest in the Georgia realty.[5] Since the widow was vested with such an interest, the plaintiffs assert that one-half of the total Georgia realty is property which "passed from the decedent to his surviving spouse," and that the value of such property should be included in determining the marital deduction.

Of course, the scope of the language in Section 2056(a) is not without its limitations. Indeed, the government asserts that one of those limitations operates to deny the taxpayers in this case any marital deduction in excess of $40,000. That limitation, which is commonly referred to as the disclaimer provision, provides in part:

"If under this section an interest would, in the absence of a disclaimer by the surviving spouse, be considered as passing from the decedent to such spouse, and if a disclaimer of such interest is made by such spouse, then such interest shall, for the purposes of this section, be considered as passing to the person or persons entitled to receive such interest as a result of the disclaimer."

26 U.S.C.A. § 2056(d) (1). The government claims that even if the decedent's widow elected to take a child's share in the Georgia realty, she effectively disclaimed, by means of the agreement with her stepson, any interest in the estate in excess of $40,000. The plaintiffs counter with the argument that the agreement does not represent a disclaimer, but rather constitutes a conveyance or sale of the widow's undivided one-half interest in the Georgia realty.

After assessing the respective contentions of the parties, the district court granted the government's motion for summary judgment, concluding (1) that the plaintiffs failed to show that the widow made any election to take a child's share in the decedent's estate, and (2) that even if it should be determined that Mrs. Burge did elect a child's share and subsequently sold that interest, the widow, by means of the agreement with her stepson, effectively disclaimed any interest in the estate in excess of $40,000. From this adverse ruling the plaintiffs appeal, asserting that the district court erred in denying the estate the claimed $82,000 marital deduction. We disagree and accordingly affirm the judgment of the district court.

We find it unnecessary to determine whether or not the widow did make an election to take a child's share in the decedent's Georgia estate. Assuming, without deciding, that she did so elect, we nevertheless conclude that $40,000 represents the value of the property which passed from the decedent to his surviving spouse. This conclusion is not based upon the statutory provision relied upon by the district court, and accordingly we intimate no opinion as to that court's ruling concerning the disclaimer provision. Rather, we think that judgment for the government is required on the basis of the following regulation:

"If as a result of a controversy involving the decedent's will, or involv-

---

5. Prior to a 1969 amendment, Georgia law provided that unless it affirmatively appeared that within the time prescribed by law a widow had elected to take a child's share, no presumption arose that she had any vested interest in realty of the estate. However, Georgia cases permitted a widow to show, by means of circumstantial evidence, that she had made an informal election to take a child's share within one year after the death of her spouse. *See* Harris v. McDonald, 152 Ga. 18,

108 S.E. 448 (1921). Thus, the plaintiffs herein assert that the widow's fee simple conveyance of her one-half undivided interest in the Georgia realty to her stepson constitutes circumstantial evidence that Mrs. Burge made an informal election to take a child's share in the decedent's Georgia estate. Present Georgia law provides that a widow is entitled to a statutory presumption that she timely elected a child's share in the estate. Ga.Code Ann. § 113-903.

ing any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having 'passed from the decedent to his surviving spouse.'" 26 C.F.R. § 20.2056(e)–2(d) (1).[6]

■ Turning our attention to the facts in the instant case, they reflect that Mrs. Burge, in the agreement with her stepson, "surrender[ed] a property interest in settlement" of all claims she may have had in her husband's estate. While we acknowledge that by the terms of the agreement the widow conveyed to her stepson in fee simple all of her interest in the Georgia realty, we nevertheless believe that the particular form of the contract should not be given such paramount importance as to overshadow and completely eclipse its substance. In addition to "conveying" property to her stepson, Mrs. Burge surrendered all of her interest in the Georgia realty, "whether arising under [the decedent's] will or under any other will or as an heir or as a widow or in any manner whatsoever * * *" Furthermore, Mrs. Burge transferred to her stepson all of her interest in the decedent's Florida property, and did "release, renounce, and disclaim any and all interest she may have in and to the property of the Estate of said Chester A. Burge." Therefore, we think that the agreement, with respect to Mrs. Burge, constitutes a total relinquishment of any and all claims which she may have had in the estate of her husband. Agreements generally take on many hues and colors, but our task is not to litmus those colors, but rather to determine that the combinations of words in their general coloration mean settlement in modern parlance in terms of the intention and purpose of the marital deduction. The fact that the instrument involved in this litigation is broad gauged cannot be controlling. Settlement language employed by lawyers is designed to be all encompassing, releasing substantive rights in variegated capacities which are often fanciful and fantastic. Lawyers' caution in devising instruments of such broad coverage does not write the tax law, and we conclude that the existence of words of conveyance does nothing to alter the essential character of the agreement as a settlement of the decedent's estate.

■ The above-quoted regulation also requires that the surrendering of the property interest be in settlement of a "controversy". The record in the instant case does not reveal all of the circumstances leading up to and surrounding the execution of the settlement agreement. We do not think, however,

6. The second paragraph of this regulation provides:

"If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having 'passed from the decedent to his surviving spouse' only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse." 26 C.F.R. § 20.2056(e)–2(d) (2). The government does not contend that the stepson's payment of $40,000 to the widow was not a "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate." Indeed, we think that any such contention would fail, since the fact that the widow's "claim was a valid one made in good faith and settled as the result of arm's length negotiations is enough to qualify it as a bona fide claim within the purview of the regulations." Estate of Barrett, 22 T.C. 606, 611 (1954).

that the regulation encompasses only those settlements achieved at the end of an armageddon. It is clear in this case that the respective interests of the widow and her stepson were substantially adverse.[7] Furthermore, the record shows that both the widow and her stepson were represented by counsel in the negotiation of the terms of the agreement. Finally, the settlement agreement provided that the stepson would not oppose, and, indeed, would consent to the application of Mrs. Burge for a statutory year's support in the amount of $10,000 out of the estate of her husband.[8] In our opinion these factors are sufficient to demonstrate that, for purposes of the regulation, a "controversy" existed between the parties prior to the execution of the settlement agreement. *See* United States Trust Co. v. Commissioner of Internal Revenue, 2 Cir. 1963, 321 F.2d 908; Estate of Barrett, *supra*.

The final provision of the regulation which deserves mention is the requirement that the controversy "involve the decedent's will." Of course, in the instant case the decedent's Florida estate was governed by a valid testamentary instrument, and the settlement agreement expressly included the relinquishment of Mrs. Burge's claims in the Florida estate. However, it could be argued that the agreement falls outside the scope of the "will controversy" regulation because it also concerns that portion of the decedent's property which

passed by intestate succession under the laws of Georgia. We decline to give the regulation such a restrictive interpretation. In United States Trust Co. v. Commissioner of Internal Revenue, *supra*, the Second Circuit had occasion to consider the scope of the "will controversy" regulation, and we think that its interpretation is particularly instructive.

In United States Trust Co. v. Commissioner of Internal Revenue a decedent sought to dispose of his assets by two testamentary instruments. In one will, the decedent placed one-third of the residue of his New York estate in trust for the benefit of his wife for life and she was given a general testamentary power of appointment over the corpus. By means of another will, the decedent undertook to devise to his wife his French villa and other property located in France. Under French law, however, the wife's interest was limited to one-fourth of the French realty unless the decedent's daughters elected to execute and file various documents relinquishing their interest in their father's French estate. Subsequent to the probating of the New York will, arm's-length negotiations between the widow and the decedent's daughters resulted in an agreement in which the widow relinquished her power of appointment over the New York property left in trust, and her stepdaughters agreed to execute the appropriate documents regarding the French realty. Thereafter, the estate of the decedent claimed a marital deduction

7. As noted above, the decedent's will was void under Georgia law because it was executed prior to his marriage to Mrs. Anna Burge and failed to contain any provision in contemplation of such marriage. *See* note 1 *supra*, and accompanying text. It is highly probable that the will was quite favorable to the decedent's stepson, who was the decedent's only heir at the time the instrument was executed. Therefore, the widow's election to take her Florida dower interest was substantially adverse to the stepson's interest in the decedent's Florida estate. Similar adverse interests existed with respect to the decedent's Georgia estate. Under Georgia law the stepson would be entitled to the entire Georgia estate if the widow failed to

make a timely election to take either a child's share or a dower interest in the Georgia realty. *See* note 2 *supra*. Thus, the widow possessed, under Georgia law, the indefeasible right to decrease substantially the amount which the stepson would otherwise be entitled to receive from the decedent's Georgia estate.

8. The $10,000 year's support did not operate to increase the $40,000 consideration which Mrs. Burge received as a result of surrendering her claims in the decedent's estate. By the express terms of the agreement, Mrs. Burge contracted to repay the $10,000 to her stepson when she received the $40,000.

for the value of the property placed in trust, and the Commissioner disallowed this deduction on the basis of the "will controversy" regulation. The taxpayer contended that the regulation was inapplicable because the trust property "passed" to the surviving spouse upon probate of the New York will and there was no "will controversy." In deciding that the regulation applied to the settlement agreement entered into by the widow and her stepdaughters, the court in *United States Trust Co.* remarked:

"Crucial in qualifying property for a marital deduction is the question of whether it passes from the decedent to one surviving spouse. The medium by which the property passes, whether it be by intestacy, one or more testamentary documents or even by a partial intestacy, is immaterial. The estate is entitled to a marital deduction up to one-half of the adjusted gross estate on property includible in the gross estate and meeting the other statutory requisites which passes from the decedent to the surviving spouse.

"When the resolution of a controversy between the beneficiaries regarding the decedent's property culminates in an agreement by which the surviving spouse relinquishes property which qualifies for the marital deduction in return for property which does not so qualify, Treas.Reg. § 20.2056 (e)–2(d) (1) is applicable. When Mrs. Davenport surrendered her power of appointment over the trust property, it no longer qualified for the marital deduction. The testamentary instrument whereby Dr. Davenport sought to leave 'La Falaise' to his wife is a part of his will; that it is embodied in a separate document does not make it any the less so even though by statute foreign realty was then excluded in computing the federal estate tax.

"We find no merit to the appellant's theory that, because under New York law Mrs. Davenport acquired vested rights in the trust property, this property passed to her from the decedent

and her subsequent relinquishment of her power of appointment did not affect marital deduction. For federal tax purposes, the federal regulations govern, Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, (1938). The regulation is clear; it provides that where an agreement resolving a controversy over the decedent's property entails the assignment or surrender of property by the surviving spouse, said property 'is not *considered* as having "passed from the decedent to his surviving spouse." ' Treas.Reg. § 20.2056(e)–2(d) (1). [Emphasis supplied.] No matter how or at what time Mrs. Davenport became entitled to the residue, she did choose to surrender a right to some of decedent's property because she wanted 'La Falaise' which was also a part of decedent's estate."

321 F.2d at 910–911.

■ We agree with the court in *United States Trust Co.* that the medium by which the decedent's property passes, whether it be by intestacy or by means of a testamentary instrument, is immaterial. For purposes of the regulation, we are at a loss to discern why a settlement of a controversy involving an estate, a portion of which passes by intestate succession, should be treated any differently than a settlement concerning only property which has been disposed of by means of a testamentary document. We think that the Second Circuit's broad interpretation of the regulation is entirely proper and we conclude that because the settlement agreement in the instant case "resolv[ed] a controversy over the decedent's property," the regulation requires that the property surrendered by the widow not be considered as having passed to her from the decedent.

■ Finally, the taxpayers contend that one-half of the Georgia realty "passed" to the widow when she made an election to take a child's share in the decedent's Georgia estate. Assuming that Mrs. Burge did acquire a vested in-

terest in the Georgia realty by virtue of an election to take a child's share in the Georgia estate, we conclude that her acquisition and subsequent relinquishment of "vested" rights in no way renders the "will controversy" regulation inapplicable. United States Trust Co. v. Commissioner of Internal Revenue, *supra*.

■ Our holding that the "will controversy" regulation applies to the settlement agreement entered into between the decedent's widow and her stepson means that the taxpayers herein are "entitled to a marital deduction only as to the value of the property interest received by the widow and not as to the value of the property she might have received had she not compromised." Mills v. United States, M.D.Ga.1965, 241 F. Supp. 955, 959. Therefore, we conclude that the court below correctly held that the marital deduction to which the taxpayers are entitled is limited to $40,000, and the judgment of the district court is accordingly

Affirmed.