In the Matter of the ESTATE
OF Harold G. MEYER.

Scot L. BURKE and Kathy A. Burke, individually, and as beneficiaries of Trust
No. P–3680, Appellants–Respondents,

v.

Janet CLELAND, Beth Garrigus, Tim Cleland, Gary Cleland, Dianne Carlsson and
Tamara Cleland; Bank One, as Personal
Representative of Decedent's Estate;
Bank Calumet as Trustee of the Harold
G. Meyer Trust Dated March 25, 1985,
Trust No. P–33206; and as Trustee of
the Harold G. Meyer Trust Dated February 6, 1990, No. P–3680; and Peoples
Bank, as Successor Trustee of Trust No.
P–3680, Dated February 6, 1990, Appellees–Petitioners.

Janet CLELAND et al., Cross–
Appellants–Petitioners,

v.

Scot L. BURKE, Kathy A. Burke and Peoples Bank, as Successor Trustee of Trust
No. P–3680, Dated February 6, 1990,
Cross–Appellees–Respondents.

No. 45A03–9802–CV–43.

Court of Appeals of Indiana.

Nov. 30, 1998.

Richard J. Rupcich, Patrick Lyp, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellants and Cross–Appellees.

Joseph E. Costanza, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, David A. Baker, Peggy A. Zemanick, McDermott, Will & Emery, Chicago, IL, for Appellees and Cross–Appellants Clelands.

Robert K. Stanley, John A. Gardner, Baker & Daniels, Indianapolis, for Appellee and Cross–Appellant Bank One.

## OPINION

BAKER, Judge.

Appellants–Respondents Scot L. Burke and Kathy A. Burke appeal the trial court's ruling on cross-motions for partial summary judgment that the death tax liability should be shared proportionally between two trusts created by the decedent Harold Meyer. Appellees–Petitioners Janet Cleland, Beth Garrigus, Tim Cleland, Gary Cleland, Dianne Carlsson, Tamara Cleland (the Clelands) and Bank One cross-appeal.

### FACTS [1]

This case arises from conflicting tax payment provisions in a will and a subsequent inter vivos trust. On April 1, 1985, Meyer executed his will which provided that after the payment of all taxes and expenses, the remaining assets were to be placed in a residuary pour-over trust (the Cleland Trust). The beneficiaries of the Cleland Trust were Meyer's only daughter, Janet Cleland, for life and Janet's children after her death. Thereafter, on February 6, 1990, Meyer created an inter vivos trust (the Burke Trust) in which he retained rights to the income for life and named his grandniece, Kathy Burke, and her husband, Scot, who also happened to be Meyer's lawyer, the sole beneficiaries upon his death. Meyer funded the Burke Trust with his most valuable possession, Bank Calumet stock, with an esti-

mated value of over $8 million. Record at 254.

Meyer died on March 30, 1997 and litigation followed. The Clelands are currently challenging in the trial court the validity of the Burke Trust. While the validity issue remains in the trial court, the issue of whether Meyer's estate or the Burke Trust should pay the federal and state taxes is now before us.

On June 6, 1997, the Clelands filed a petition for declaratory judgment to determine how the death taxes should be allocated. Then, in September, the Burkes filed a claim against Meyer's estate to pay all the death taxes. Bank One, as personal representative of the estate, denied the request. The Burkes then moved for summary judgment on the Clelands' petition for declaratory judgment, arguing that the estate should pay all the death taxes, and the Clelands also moved for summary judgment, arguing that the Burke Trust should pay. In October, Bank One, as personal representative and as trustee of the Cleland Trust, joined the Clelands' petition. On November 12, 1997, Bank One, pursuant to Article II of the Burke Trust, demanded that the Burke Trust pay all federal and state death taxes and the trustee refused.

A hearing was held on the cross-motions for summary judgment on November 18, 1997. Thereafter, on December 23, 1997, the trial court issued its ruling on the cross-motions for summary judgment on the death tax allocation issue. The court ordered each party to "pay the death taxes, Federal estate and generation skipping transfer and State inheritance tax and estate tax ... proportionately to the amounts each received." R. at 449. The trial court included with its order a memorandum which read as follows:

Indiana IC 29–2–12–1 provides for apportionment of Federal estate tax imposed by the U.S. Revenue Code. Decedent's Will, Article III, directs the Executor to pay out of his estate this estate tax. IC 29–2–12–7(a)(b) states that if a specific di-

---

1. Oral argument was held on October 9, 1998 in Bloomington at the Indiana University School of Law. Along with the bench, the faculty and students enjoyed an excellent argument which made those who were beginning their journey and all who were already in the legal profession proud.

rection is made to pay Federal estate tax from the Testator's estate the statute does not apply. Consequently the apportionment of Federal estate tax under this act is inapplicable.

Apportionment (Recovery) of Federal estate tax, if any, must fall under the Internal Code, 26 U.S.Code 2207 B. The Burke Trust is includible for federal estate tax purposes since Grantor–Decedent retained a live interest therein, and a right to revoke. But 2207B(a)(2) requires "specific reference" in the will in order to avoid the recovery of the Federal estate tax from the estate of Testator. Meyer's will specifies the federal estate tax be paid out of his estate without apportionment (recovery) and further waived on behalf of his estate any right to recover from the beneficiaries any part of the tax paid. Although the actual reference to "2207B(a)(2)" is not included in the will, the above language meets the "specific reference" requirement. Thus the Federal Act is not applicable to the recovery/apportionment of Federal estate tax from the "Estate" of Testator.

This unique situation leaves the Court with two separate entities (Will/Cleland Trust and the Burke Trust) which generate death taxes as a result of the death of Harold G. Meyer. Consequently the Court reaches the decision indicated.

R. at 450. The Burkes appeal and Bank One and the Clelands cross-appeal this decision.[2]

## DISCUSSION AND DECISION

### I. Conflicting Tax Provisions in Will and Burke Trust

Before discussing each party's contentions, it is important to address the tax provisions of Meyer's will and the Burke Trust that are at the core of this appeal. The parties agree that there is no ambiguity within the following provisions and, therefore, the issue is ripe for summary judgment because there are no genuine issues of material fact. Instead, only questions of law remain, involving which of the inconsistent provisions prevails

and who should pay the taxes. Article III of the will, Payment of Taxes, provides that:

> I direct my Executor to pay out of my estate all estate, inheritance, transfer, succession or other taxes or governmental charges that shall become payable upon or by reason of my death with respect to property passing under my Will, by operation of law or otherwise, including any interest and penalties thereupon without apportionment, and I hereby waive on behalf of my estate, any right to recover from my beneficiaries any part of such taxes so paid.

In pertinent part, Article II of the Burke Trust provides:

> Only to the extent that the residue of my probate estate is insufficient or upon request of my Personal Representative, the Trustee shall expend such amounts as are necessary to pay ... all federal and state death taxes payable because of my death (other than any tax on a generation-skipping transfer[ ) ].

### II. Death Tax Presumptions

In addition to determining which provision applies, this appeal raises several tax law issues. There are three taxes at issue, Indiana inheritance tax, federal estate tax and federal generation-skipping transfer (GST) tax. With respect to the Indiana inheritance tax there is a presumption of apportionment, but the presumption can be rebutted by will or trust. *In re Estate of Kirby*, 498 N.E.2d 64, 66 (Ind.Ct.App.1986), *trans. denied.*

The federal death taxes raise additional issues. Indiana law provides for an equitable apportionment of federal estate tax. IND. CODE § 29–2–12–2 provides as follows:

> Unless a decedent shall otherwise direct by will, the federal estate tax imposed upon decedent's estate, shall be apportioned among all of the persons, heirs and beneficiaries of decedent's estate who receive any property which is includable in the total gross estate of said decedent for

---

**2.** This interlocutory appeal is premised on Ind. App. Rule 4(B)(1) in that the trial court's order

required the payment of money.

the purpose of determining the amount of federal estate tax to be paid by said estate. . . .

In *Kirby*, we found a simple pay-all-death taxes clause sufficient to overcome the presumption of apportionment. However, Indiana apportionment law is preempted by federal law in specific instances. The Burke Trust generated federal estate taxes pursuant to 26 U.S.C. § 2036(a)(1) because Meyer retained rights to the trust income during his life. Under § 2207B, there is a presumption that the estate has a right of recovery against the trust for taxes incurred as a result of § 2036.[3] However, a decedent may avoid this presumption if he "otherwise directs in a provision of his will (or revocable trust) specifically referring to this section." § 2207B(a)(2).[4] Therefore, if the will provision applies, we must determine whether Meyer properly rebutted the presumption even though Article III did not cite the section number. The parties agree that the only case which discusses this section is *In re Estate of Miller*, 230 Ill.App.3d 141, 172 Ill. Dec. 269, 595 N.E.2d 630 (Ill.Ct.App.1992), in which the relevant portions are merely dicta. In *Miller*, the Illinois court of appeals held that a similar tax provision sufficiently rebutted the presumption of a right of recovery under § 2207A. While finding that § 2207A did not require a direct reference to the section, the court noted by contrast that the parallel provision § 2207B "does expressly require an 'otherwise' direction to specifically refer to the statute." *Id.* at 634.[5]

The Burke Trust also generated a GST tax of 55%. There was a generation skipping event when the trust property was transferred to the Burkes because Kathy Burke was Meyer's grandniece, more than one generation below him. Under § 2603, the presumption that the trust will pay the GST tax may be rebutted by "specific reference to the

tax" in the "governing instrument." § 2603(b). The issues that arise are how specific the reference must be and whether the will or the trust is the "governing instrument."

### III. Parties' Contentions

#### A. Burkes

The Burkes' arguments are grounded in the notion that the tax provision in the will controls because a non-testamentary trust may not direct or empower the personal representative to act in a manner inconsistent with the will. Specifically, the Burkes contend that the language in the Burke Trust alters the testamentary intent and directly conflicts with the clear language of the will. They cite *Yoakley v. Raese*, 448 So.2d 632 (Fla.Ct.App.1984) for the proposition that when a conflict exists, the testamentary document must control. This decision was premised on the Florida apportionment statute which required apportionment of estate taxes unless the will provided otherwise. *Id.* at 634. Moreover, the Burkes assert that the only proper way to modify a will is by revocation or codicil.

The Burkes initially argue that the trial court's memorandum and order are inconsistent and irreconcilable. They note that in its memorandum the court specifically found that the will overcame the presumption for apportionment of federal estate taxes. However, the court's order proceeded to apportion these taxes. Therefore, the Burkes argue that we should instruct the trial court to enter an order consistent with its findings. The Burkes further argue that the language in the will is sufficient to overcome each presumption. Thus, they contend that the estate should pay all of the death taxes.

With respect to the Indiana inheritance tax, the Burkes note that the trial court's

---

**3.** Without citing to any authority, the Burkes argue that § 2207B is not applicable because the property is "more properly included" under § 2038 (reservation of right to revoke) rather than § 2036 (reservation of life interest in income). This argument is without merit because the two sections are not mutually exclusive. *See* Treas. Reg. § 20.2031–1(a)(2) (noting that there is considerable overlap and property may be included under more than one section).

**4.** The current version of § 2207B(a)(2), applicable only to estates of decedents dying after August 5, 1997, no longer requires a specific reference to the section but rather an indication of intent in the will or trust to waive any right of recovery under the section.

**5.** Because it would be unnecessary to our decision, we state no opinion as to the correctness of the dicta in *Miller* or what is required to make a specific reference to the section under § 2207B.

order of pro rata apportionment was not only inconsistent with each party's position on summary judgment but also contrary to Indiana law. In *Kirby,* 498 N.E.2d at 65–66, we found that the following language sufficiently directed that the Indiana inheritance tax be paid out of the residuary estate:

> After the payment of all expenses, taxes, fees, Court costs and bequests, as hereinabove set forth, I direct that the balance and residue of my estate be divided into five (5) equal parts.

The Burkes note that the language in Meyer's will is even more clear in that it directs payment of all taxes without apportionment.

Similarly, the Burkes contend that Meyer's will opted out of the federal estate tax presumption of the estate's right of recovery against the trust. They argue that although the will does not specifically cite § 2207B, the specific reference requirement was satisfied. Initially, the Burkes point to the trial court's memorandum where it found that there was a specific reference. Moreover, the Burkes argue that the will's intent and instructions are clear that the personal representative is to pay all taxes without apportionment and without "any right to recover." Specifically, the Burkes note that § 2207B is a "right of recovery statute" and entitled "Right of recovery where a decedent retains a life interest."

Finally, with regard to the GST tax, the Burkes make alternative arguments. Initially, they argue, contrary to their earlier position that the will controls, that the Burke Trust is the "governing instrument" for purposes of § 2603(b). The Burkes argue that the Burke Trust clearly makes a specific reference to the GST tax by providing that the trustee shall pay all taxes "other than any tax on a generation-skipping transfer." Alternatively, if we find that the will is the governing instrument, the Burkes argue that the specific reference requirement is satisfied by the reference in the will to "transfer" taxes "that shall become payable upon or by reason of my death."

### B. Bank One

Bank One initially counters the Burkes' assertion that the will controls. First, it notes that there are ways to alter a will without executing a codicil. Bank One notes the doctrine of ademption as an example of how a person may alter provisions of his will without a codicil. More convincingly, Bank One refers to the Indiana apportionment statute. Specifically, it notes that the presumption of apportionment of federal estate taxes may be rebutted "by will" [6] and that the statute goes on to define "will" to include a "trust or other instrument governing the distribution of assets following an individual's death." [7] Moreover, Bank One contends that the Burkes' reliance on *Yoakley* is misplaced because the Florida apportionment statute did not define "will" to include an inter vivos trust.

Instead, Bank One alleges that the more common rule is that the last instrument in time controls when there is a conflict between unambiguous provisions in a will and inter vivos trust. *See In re Estate of Pickrell,* 248 Kan. 247, 806 P.2d 1007, 1013 (Kan. 1991) (adopting this rule and noting that it is the general rule in other jurisdictions). In *Pickrell,* the decedent originally executed a will and inter vivos trust simultaneously. Five years later, she amended the tax payment provision of the trust, resulting in a direct conflict between her will and trust. The trust beneficiaries argued, as the Burkes, that the will provision should control because a testamentary instrument could not be altered by a trust. The Kansas supreme court disagreed, noting that the will and trust were integral parts of the decedent's estate plan. Specifically, the court held as follows:

> An inter vivos trust, which is part of a coordinated estate plan, may include a provision instructing the trustee to pay the trust's ratable share of the death taxes and administration expenses. Under the facts of this case, where a conflict exists between an earlier executed will and later amended inter vivos trust as to how the death taxes and the administration expenses are to be paid, the last instrument in time controls.

---

**6.** I.C. § 29–2–12–2.

**7.** I.C. § 29–2–12–1.5.

*Id.* The Burkes respond that *Pickrell* has no application here because there was no estate planning or coordinated effort between the will and the Burke Trust which was executed five years after the will. Additionally, the trust in *Pickrell* only directed the trustee to pay the personal representative the trust's proportional tax liability and it did not direct the personal representative to demand payment.

Specifically, Bank One argues that the Burke Trust should pay the Indiana inheritance and federal estate taxes, relying on the express terms of the Burke Trust and the request for payment. Bank One cites the language in the Burke Trust which provides that "upon request of my Personal Representative, the Trustee shall expend such amounts...." Therefore, Bank One contends that demand was within the discretion of the personal representative and that upon demand it became the duty of the Burke Trustee to pay the Indiana inheritance and federal estate taxes. Moreover, it argues that the trial court erred by failing to give effect to this language.

Additionally, Bank One argues that the Burke Trust must pay the GST tax because neither the will nor the Cleland Trust properly rebut the presumption in § 2603(a) by specific reference to the tax. Oddly, Bank One does not explain why it is looking to the will or the Cleland Trust as the governing instrument for purposes of § 2603(b), when it relied exclusively on the Burke Trust for the other taxes.

## C.  Clelands

The Clelands argue in the alternative,[8] relying on *Miller*, that we should affirm the pro rata apportionment of the federal estate tax because neither the will nor the Burke Trust provision waived the presumption by specifically referring to § 2207B. The Clelands further argue that the ruling on the GST tax and the Indiana inheritance tax should be reversed because federal and state law do not support pro rata apportionment of these taxes. Instead, they argue that the Burke Trust should pay all the GST tax and the

amount of Indiana inheritance tax generated by the trust.[9]

With respect to the Indiana inheritance tax, the Clelands assert that the will, Cleland Trust and Burke Trust should be considered together as part of Meyer's testamentary plan. Otherwise, the Clelands argue that "the elaborate and specific testamentary plan contained in the Cleland Trust would be eviscerated by the accidental effect of the boilerplate tax language placed in the will." Brief of Appellees Clelands at 30. The Clelands further assert that Meyer did not intend for his probate estate to be exhausted by the payment of inheritance taxes on non-probate assets. They argue that this is especially clear when the will's tax provision is interpreted in conjunction with the Burke Trust, executed five years later.

The Clelands' argument regarding the GST tax tracks Bank One's argument, asserting without citing to any authority that the will and Cleland Trust are the governing instruments. Moreover, the Clelands note that the tax court of the United States addressed the degree of specificity necessary to waive the presumption in *Estate of Monroe,* 104 T.C. 352, 1995 WL 128441 (1995) *rev'd in part on other grounds, Estate of Monroe v. Commissioner,* 124 F.3d 699 (5th Cir.1997). The tax court held that a clause in decedent's will which directed that "all federal estate taxes, state and City inheritance or estate transfer taxes, or other death taxes attributable to the bequests ... shall be paid from the residuum of my estate" was not sufficient. *Id.* at 364–65. Rather, the court held that the governing instrument must contain "an explicit reference to generation-skipping transfer taxes." *Id.* at 365. Therefore, the Clelands contend that the will did not rebut the presumption because there was no such "explicit reference" in the instant case.

Finally, the Clelands address the trial court's memorandum and the Burkes' argument concerning its inconsistency with the order. The Clelands first note that the memorandum only discusses the federal es-

---

8.  Bank One and the Clelands incorporate by reference each other's arguments.

9.  The Clelands note that the Burke Trust was taxed at a higher rate under the Indiana inheritance tax because the Burkes were more remotely related to Meyer.

tate tax and, therefore, has no relevance to the other taxes. Moreover, it is not a finding of fact or conclusion of law because on November 18, 1997, the trial court specifically denied the Burkes' request for such findings. The Clelands argue that we should disregard the trial court's memorandum because it is not binding on this court and contains crucial legal errors.

### IV. Standard of Review

Our standard of review for a grant of summary judgment is well established. On appeal, we stand in the same position as the trial court. *Harkness v. Hall*, 684 N.E.2d 1156, 1159 (Ind.Ct.App.1997). Summary judgment is only appropriate where the designated materials reveal that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Burnett v. Cincinnati Ins. Co.*, 690 N.E.2d 747, 749 (Ind.Ct.App.1998), *trans. denied.* When no genuine issues of material fact divide the parties, as in the instant case, we need only determine whether the trial court correctly applied the law to the undisputed facts. *Id.* We will affirm the grant of summary judgment if it is based upon any legal theory which is consistent with the facts disclosed in the record. *Wolfe v. Stork RMS–Protecon, Inc.*, 683 N.E.2d 264, 267 (Ind.Ct.App.1997).

### V. Trial Court's Memorandum

Initially, we note that under our de novo review of the grant of summary judgment as discussed above, the trial court's memorandum on the federal estate tax issue is not binding on us. Moreover, we agree with the Clelands that the memorandum contains several legal errors. It appears that the trial court misunderstood the purpose of § 2207B and believed that waiver meant that the Burkes could not recover their pro rata share of the federal estate tax from the estate, rather than that the estate could not recover from the Burkes.[10] This might explain the

apparent inconsistency in the trial court's memorandum and order. Therefore, we will stand in the shoes of the trial court and consider the issues anew.

### VI. The Trust Controls

█ The issue of whether a tax provision in a subsequent inter vivos trust may control when it directly conflicts with the decedent's will appears to be an issue of first impression in Indiana. Initially, we observe that today many people rely on inter vivos trusts as their primary testamentary vehicle. Recognizing this, our legislature expanded the definition of "will" within the Indiana Apportionment Statute to include "trust."[11] Therefore, the Burkes' argument that the only proper way to modify tax provisions in a will is by revocation or codicil is incorrect. Moreover, we find the rule established by the Kansas supreme court in *Pickrell*, 806 P.2d at 1013, persuasive. We hold that the last instrument in time controls when there is a conflict between unambiguous tax provisions in a will and an inter vivos trust.[12] Thus, in the instant case, the trust provision controls because it is the final expression of Meyer's testamentary intent.

█ Additionally, we must address the Burkes' argument that Bank One as personal representative of the estate had no authority to demand payment of the taxes because its power is derived solely from the will which provides otherwise. An individual has a right to designate who or what portion of his or her estate is to bear the burden of death taxes and, as stated above, Meyer's last expression of intent is found in the Burke Trust. The language in the trust is clear. It specifically provides that the personal representative may request payment from the trustee and to what extent. Specifically, Bank One may request payment of the estate's federal and state death taxes, except any GST tax owed by the estate. Therefore,

---

**10.** The trial court made the following misstatements:

> But 2207B(a)(2) requires "specific reference" in the will in order to avoid the recovery of the Federal estate tax *from the estate of Testator.* Thus the Federal Act is not applicable to the recovery/apportionment of Federal estate tax *from the "Estate" of Testator.*

R. at 450 (emphasis added).

**11.** We note that the Burkes' reliance on *Yoakley*, 448 So.2d 632, is misplaced because the Florida apportionment statute did not define "will" to include a trust.

**12.** Our holding is strictly limited to the application of Indiana's Apportionment Statute regarding the administration of death taxes.

Meyer clearly intended that the personal representative have authority to make such a request and Bank One did not go beyond the scope authorized by the Burke Trust.

### VII. Indiana Inheritance and Federal Estate Taxes

 The tax provision in the Burke Trust provides that upon request of the personal representative the trustee shall pay "all federal and state death taxes." As the Burkes note, in *Kirby*, 498 N.E.2d at 65–66, we found a similar pay-all-taxes clause sufficient to rebut the presumption of apportionment of Indiana inheritance and federal estate taxes. Therefore, the Burke Trust is responsible for all the Indiana inheritance and federal estate taxes attributable to Meyer's estate and the Burke Trust. As noted above, we need not decide the issue of what constitutes a specific reference under § 2207B.

### VIII. GST Tax

 In reference to the GST tax, we find that the Burke Trust is the governing instrument and, therefore, it is not necessary for us to determine whether there was a "specific reference to the tax" in the will. Moreover, the language in the Burke Trust refers only to any GST tax that the estate might incur, in this case none, and makes no direction regarding the GST tax of the Burke Trust. Therefore, the Burke Trust must pay its own GST tax because the presumption was not rebutted by an "otherwise" direction.

### CONCLUSION

In light of our resolution of the issues set forth above, we conclude that the tax provision in the subsequent inter vivos trust controls over the conflicting provision in the will because the last instrument in time controls as the most recent expression of the decedent's intent. We also find that pursuant to the specific direction in the trust the personal representative had authority to request payment of the taxes from the trustee of the Burke Trust. Specifically, we conclude that the trial court erred in apportioning the death taxes between the estate and the Burke Trust. We hold that the Burke Trust is responsible for all of the Indiana inheritance and federal estate taxes because the presumption of apportionment was sufficient-

ly rebutted in the trust. Finally, we hold that the Burke Trust must pay its GST tax because the trust is silent as to the source of payment of its own GST tax and, therefore, does not rebut the presumption under § 2603.

Reversed and remanded for further proceedings consistent with this opinion.

NAJAM and BAILEY, JJ., concur.